## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MARK GEINOSKY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10-cv-1438 |
| | ) | |
| vs. | ) | Judge Darrah |
| | ) | Magistrate Judge Valdez |
| CITY OF CHICAGO, | ) | |
| Chicago Police Officers | ) | |
| KENNETH WILKERSON, Star 11196, | ) | |
| STEVEN SABATINO, Star 9862, | ) | |
| HORST HEGEWALD, Star 18609, | ) | |
| WILLIAM WHELEHAN, Star 7949, | ) | |
| PAUL ROQUE, Star 12812, | ) | |
| JENNIFER FREGEAU, Star 9213, | ) | |
| BRIAN REIDY, Star 12464, and | ) | |
| LUIS AGUILAR, Star 11616, | ) | Jury Demand |
| | ) | |
| Defendants. | ) | |

### FIRST AMENDED COMPLAINT

1. This is an action for money damages brought pursuant to 42 U.S.C. § 1983.

2. Jurisdiction for Plaintiff's federal claims is based on 28 U.S.C. §§ 1331 and 1343(a).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that the claims arose in this district as alleged below.

### Parties

4. Plaintiff is a resident of Orland Park.

5. Defendant-Officers WILKERSON, SABATINO, HEGEWALD, WHELEHAN, ROQUE, FREGEAU, REIDY, and AGUILAR are duly appointed and sworn Chicago police officers. At all times relevant to this Complaint, the Defendant-Officers were acting in the course and scope of their employment, and under color of state law, ordinance and/or regulation.

6. At the time of the incident, the Defendant-Officers were members of Chicago Police Department Unit 253.

7. The Defendant-Officers are sued in their individual capacities.

8. Defendant CITY OF CHICAGO is a municipal corporation, duly incorporated under the laws of the State of Illinois, and is the employer and principal of the Defendant-Officers.

## Background

9. This case arises from the malicious issuance of 24 baseless and contrived parking tickets to Plaintiff over a 14-month period. All 24 tickets were issued by Chicago police officers assigned to Unit 253 of the Chicago Police Department. During the 14-month period, Plaintiff contacted a supervisor from Unit 253, the Internal Affairs Division of the Chicago Police Department, the Independent Police Review Authority, and spoke with the Administrative Law Officers every time he had a hearing regarding the parking tickets. No one could explain to Plaintiff why he kept receiving the parking tickets. Upon information and belief, the tickets were issued based on a conspiracy between the Chicago Police and Plaintiff's ex-wife, who wanted to injure and get vengeance against Plaintiff.

10. Plaintiff was married to Sharon for 20 years. On October 6, 2007, Plaintiff and Sharon separated. As part of the separation, Sharon was allowed to use one of the family vehicles (a Toyota), although it remained registered to Plaintiff.

11. Shortly thereafter, Plaintiff started to receive parking tickets for the Toyota that Sharon was using. These tickets were not left on Plaintiff's vehicle. Instead, Plaintiff received them in the mail.

12. Initially, Plaintiff received four tickets in the mail for alleged parking violations.

13. Three of the tickets stated that the violations occurred at 4600 South Winchester in Chicago at 11:00 p.m., on October 19, 2007, for parking withing fifteen feet of a fire hydrant, parking in a crosswalk, and obstructing the roadway.

14. One of the tickets stated that the violation occurred at 1658 West 47th Street in Chicago (about a half mile from the other three tickets) on October 19, 2007, at 11:20 p.m. (20 minutes after the first three tickets were issued) for parking in a bus/taxi/carriage stand.

15. These tickets were issued by Defendant HORST HEGEWALD, who was assigned to Unit 253.

16. The total fine for the four tickets was $315.00.

17. Plaintiff did not commit the violations listed on the tickets, and Sharon told Plaintiff that she did not commit the violations. At that time, Plaintiff had no idea why he was issued these tickets.

18. Plaintiff contested the tickets.

19. The notice that Plaintiff received in the mail for the October 19, 2007, tickets stated that Plaintiff could contest the charges by appearing in person for a hearing between December 17-21, 2007.

20. On December 16, 2007, Plaintiff was issued three more parking tickets for the Toyota. Plaintiff also received these tickets in the mail.

21. Two of the December 16, 2007, tickets were for parking within fifteen feet of a fire hydrant, and one was for obstructing the roadway.

22. One of the tickets for parking within fifteen feet of a fire hydrant alleged the violation occurred at 8:05 p.m. at 2633 South Kostner.

23. The second ticket for parking within fifteen feet of a fire hydrant alleged the violation occurred at 8:00 p.m. at 2729 South Kostner.

24. The obstructing the roadway ticket was also issued for a violation allegedly occurring at 8:00 p.m. at 2729 South Kostner.

25. The total fine for these tickets was $275.00.

26. These tickets were issued by Defendant WILLIAM WHELEHEN, who was assigned to Unit 253.

27. Defendant BRYAN REIDY was WHELEHEN's partner.

28. WHELEHEN used REIDY's citation book to write these tickets.

29. Plaintiff did not commit the violations listed on the tickets, and Sharon told Plaintiff that she did not commit the violations.

30. Plaintiff had to contest or pay the December 16, 2007, tickets by January 23, 2008.

31. Plaintiff contested these tickets.

32. On December 19, 2007, Plaintiff contested the October 19, 2007, tickets at a hearing. The Administrative Law Officer, Sherry R. Faulkner, found that the violations alleged in the tickets did not occur and dismissed the charges.

33. After the hearing, Plaintiff contacted a supervisor of Unit 253 of the Chicago Police Department to make a complaint about receiving the baseless tickets. Plaintiff never received a response.

34. On January 11, 2008, Plaintiff was issued three more parking tickets for the Toyota. Once again Plaintiff received the tickets in the mail.

35. The tickets were for parking withing fifteen feet of a fire hydrant, parking in a crosswalk, and obstructing the roadway. All three of the tickets alleged the violation occurred at 4379 West 26th Street at 9:00 p.m. The total fine for these tickets was $225.00.

36. These three tickets were issued by Defendant PAUL ROQUE, who was assigned to Unit 253.

37. The notice that Plaintiff received in the mail for the January 11, 2008, tickets stated that Plaintiff could contest the charges by appearing in person for a hearing between March 17-21, 2008.

38. In late January 2008, Plaintiff received the Toyota back from Sharon.

39. When Plaintiff received the Toyota back from Sharon he spoke with her about the above tickets. Sharon told Plaintiff that she never parked the Toyota in the locations designated on the tickets and never received a copy of any tickets on the windshields of the car or any other way. Sharon told Plaintiff she had no idea why he kept receiving the tickets.

40. Plaintiff contested the December 16, 2007, and the January 11, 2008, tickets at a hearing on February 25, 2008. The Administrative Law Officer, Gregory G. Plesha, found that the violations alleged in the tickets did not occur and dismissed the charges.

41. After the hearing on February 25, 2008, Plaintiff did not receive any more tickets for three months.

## Facts

42. On April 1, 2008, Defendant LUIS AUGILAR queried Plaintiff's license plate number via the Chicago Police Department's Information Services Division.

43. AUGILAR was assigned to Unit 253.

44. On May 2, 2008, Defendant KENNETH WILKERSON issued Plaintiff four parking tickets for the Toyota.

45. WILKERSON was assigned to Unit 253.

46. Plaintiff received these tickets in the mail.

47. The tickets were for expired plates, parking on the sidewalk, parking within fifteen feet of a fire hydrant, and double parking.

48. The ticket numbers were in sequential order: 0054061963, 0054061964, 0054061965, and 0054061966.

49. The tickets stated that all of the alleged violations occurred at 2030 West Cermak Road at 10:00 p.m. on May 2, 2008.

50. The Toyota was not at 2030 West Cermak Road at 10:00 p.m. on May 2, 2008, and Plaintiff did not commit the violations alleged in the tickets.

51. The notice that Plaintiff received in the mail for the May 2, 2008, tickets stated that Plaintiff could contest the charges by appearing in person between July 7 through July 11, 2008.

52. The total fine for the four tickets was $310.00

53. In May 2008, Plaintiff contacted the Chicago Police Department Internal Affairs Division (IAD) to complain about the tickets. Plaintiff was told that Internal Affairs does not investigate parking tickets.

54. On July 7, 2008, Defendant AUGILAR queried Plaintiff's license plate number via the Chicago Police Department's Information Services Division.

55. On July 8, 2008, WILKERSON issued Plaintiff three more parking tickets for the Toyota.

56. Defendant JENNIFER FREGEAU was WILKERSON's regular partner and was his partner on July 8, 2008.

57. FREGEAU has written tickets from WILKERSON's citation book before.

58. Once again, Plaintiff received the tickets in the mail.

59. The July 8, 2008, tickets were for parking within fifteen feet of a fire hydrant, double parking, and obstructing the roadway.

60. The ticket numbers were still in sequential order from the previous tickets he received in May 2008: 0054061967, 0054061968, and 0054061969.

61. The tickets stated that the alleged violations occurred at 8828 South Houston Avenue at 10:00 p.m. on July 8, 2008.

62. The Toyota was not at 8828 South Houston Avenue at 10:00 p.m. on July 8, 2008, and Plaintiff did not commit the violations alleged in the tickets.

5

63. The total fine for the three tickets was $275.00

64. The notice that Plaintiff received in the mail for the July 8, 2008, tickets stated that Plaintiff could contest the charges by appearing in person between September 8-12, 2008.

65. On July 11, 2008, Plaintiff contested the May 2, 2008, tickets at a hearing. The Administrative Law Officer, Gregory G. Plesha, found that the violations listed in the tickets did not occur and dismissed the charges.

66. On August 27, 2008, WILKERSON issued Plaintiff three more tickets for the Toyota.

67. Plaintiff received these tickets in the mail.

68. The August 27, 2008, tickets were for parking within fifteen feet of a fire hydrant, parking on the crosswalk, and obstructing the roadway.

69. The ticket numbers were 0054061970, 0054061971, and 0054061972.

70. The tickets stated that the alleged violations occurred at 1931 West 63rd Street at 10:00 p.m. on August 27, 2008.

71. The total fine for the three tickets was $235.00

72. The Toyota was not at 1931 West 63rd Street at 10:00 p.m. on August 27, 2008, and Plaintiff did not commit the violations alleged in the tickets.

73. The notice that Plaintiff received in the mail for the August 27, 2008, tickets stated that Plaintiff could contest the charges by appearing in person between November 3-7, 2008.

74. On September 8, 2008, Plaintiff contested the July 8, 2008, tickets at a hearing. The Administrative Law Officer, Catherine M. Nichols, found that the violations listed in the tickets did not occur and dismissed the charges.

75. After the September 8, 2008, hearing, Plaintiff contacted the Independent Police Review Authority (IPRA).

76. IPRA opened a file and assigned it Log #1020122.

77. Upon information and belief, IPRA transferred the investigation to IAD.

78. In September 2008, Plaintiff sold the Toyota that had been receiving the false tickets.

79. Plaintiff purchased a new vehicle with a new license plate number.

80. On October 1, 2008, Plaintiff received a letter from IAD closing the investigation.

6

81. On October 7, 2008, WILKERSON issued Plaintiff three more parking tickets for the Toyota.

82. FREGEAU was WILKERSON's partner on October 7, 2008.

83. Plaintiff received these tickets in the mail.

84. The tickets were for double parking, parked/standing with the motor running and the vehicle being unattended, and obstructing the roadway.

85. The ticket numbers were 0054061973, 0054061974, and 0054061975.

86. The tickets stated that the alleged violations occurred at 7379 South South Chicago on October 7, 2008, at 10:00 p.m.

87. The total fine for the tickets was $250.00

88. The Toyota was not at 7379 South South Chicago on October 7, 2008, at 10:00 p.m., and Plaintiff did not commit the violations alleged in the tickets.

89. In fact, it was impossible for Plaintiff to commit the alleged violations as he was no longer in possession of the Toyota.

90. The notice that Plaintiff received in the mail for the October 7, 2008, tickets stated that Plaintiff could contest the charges at a hearing by appearing in person between January 12-16, 2009.

91. Plaintiff contested the August 27, 2008, tickets at a hearing on November 7, 2008. The Administrative Law Officer, Mark S. Boyle, found that the violations listed in the tickets did not occur and dismissed the charges.

92. On December 1, 2008, Defendant STEVEN SABATINO issued Plaintiff one parking ticket for the Toyota.

93. SABATINO was assigned to Unit 253.

94. Plaintiff received the notice in the mail.

95. The ticket was for parking within fifteen feet of a fire hydrant.

96. The ticket stated that the alleged violation occurred at 4749 South Paulina on December 1, 2008, at 11:30 p.m.

97. On December 1, 2008, Plaintiff was no longer in possession of the Toyota and the title was no longer in his name.

98. The fine for the ticket was $100.00.

7

99. The Toyota was not at 4749 South Paulina on December 1, 2008, at 11:30 p.m, and Plaintiff did not commit the violations alleged in the tickets.

100. The notice that Plaintiff received in the mail for the December 1, 2008, tickets stated that Plaintiff could contest the charges by appearing in person between March 3-6, 2009.

101. On January 15, 2009, Plaintiff contested the October 7, 2008, tickets at a hearing. The Administrative Law Officer, Gregory G. Plesha, found that the violations listed in the tickets did not occur and dismissed the charges.

102. In February 2009, Plaintiff still had not received any response from IPRA or IAD regarding his complaints about the false tickets.

103. Plaintiff contacted the "Problem Solver" at the Chicago Tribune.

104. On February 20, 2009, (shortly after contacting the Problem Solver) Plaintiff received a letter from IAD stating they were reopening his case.

105. On March 3, 2009, Plaintiff contested the December 1, 2008, ticket at a hearing. The Administrative Law Officer, Michael J. Dudek, found that the violation listed in the ticket did not occur and dismissed the charge.

106. The Defendant-Officers conspired together to issue Plaintiff false tickets as described above.

107. Each individual Defendant-Officer acted willfully and wantonly, maliciously, and with a conscious disregard and deliberate indifference to Plaintiff's rights.

108. As a direct and proximate result of the acts of the Defendants described above, Plaintiff suffered damages including emotional distress and pecuniary damages.

## COUNT I
### (42 U.S.C. § 1983 – Equal Protection - Class of One)

109. Plaintiff realleges paragraphs 1 through 108 as if fully set forth herein.

110. Defendant-Officers intentionally treated Plaintiff differently than others similarly situated.

111. There was no rational basis for the difference in treatment.

112. The Defendant-Officers were motivated by illegitimate animus against the Plaintiff.

WHEREFORE, Plaintiff asks that this Honorable Court:

a)     Enter judgment against the individual Defendants;

b)     Award Plaintiff compensatory and punitive damages, as determined at trial;

c)     Award Plaintiff attorney's fees and costs;

d)     Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT II
### (42 U.S.C. § 1983 – Substantive Due Process, Egregious Abuse of Power)

113. Plaintiff realleges paragraphs 1 through 108 as if fully set forth herein.

114. The Defendant-Officers repeatedly issued Plaintiff false parking tickets. Four of the parking tickets that were maliciously issued to Plaintiff were issued to a vehicle that was no longer in Plaintiff's possession or in his name

115. Defendant-Officers conduct was an egregious arbitrary abuse of government power that shocks the conscience.

WHEREFORE, Plaintiff asks that this Honorable Court:

a)     Enter judgment against Defendant-Officers,

b)     Award Plaintiff compensatory and punitive damages,

c)     Award attorneys' fees and costs, and

d)     Award any further relief that this Honorable Court deems just and equitable.

## COUNT III
### (42 U.S.C. § 1983 – Civil Conspiracy)

116. Plaintiff realleges paragraphs 1 through 108 as if fully set forth herein.

117. Defendants acted in concert pursuant to an agreement to deprive Plaintiff of his constitutional rights.

118. Defendant KENNETH WILKERSON, STEVEN SABATINO, HORST HEGEWALD, WILLIAM WHELEHAN, PAUL ROQUE, JENNIFER FREGEAU, BRIAN REIDY, LUIS AGUILAR were all assigned to Unit 253 when Plaintiff received the false tickets.

119. WILKERSON, SABATINO, HEGEWALD, WHELEHAN, ROQUE, FREGEAU, REIDY, and AGUILAR, conspired and acted together to issue Plaintiff false parking tickets.

120. The last false ticket that Plaintiff received was on December 1, 2008, by Defendant SABATINO.

121. WILKERSON, SABATINO, HEGEWALD, WHELEHAN, ROQUE, FREGEAU, REIDY, and AGUILAR knowingly and intentionally schemed and worked together in a common plan to issue Plaintiff the false parking tickets and deprived him of his constitutional rights.

122. As described above, Plaintiff suffered harm and injury as a result of Defendants' conspiracy to deprive him of his constitutional rights.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against Defendant-Officers,

b) Award compensatory and punitive damages, as determined at trial,

c) Award attorneys' fees and costs, and

d) Award any further relief that this Honorable Court deems just and equitable.

## COUNT IV
### (Indemnification Claim pursuant to 745 ILCS 10/9-102)

123. The acts of the Defendant-Officers described in the above claims were willful and wanton, and committed in the scope of employment.

124. Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, Defendant CITY OF CHICAGO is liable for any judgments in this case arising from the Defendant-Officers' actions.

WHEREFORE, Plaintiff asks that this Honorable Court order Defendant CITY OF CHICAGO to indemnify the Defendant-Officers for any judgment entered in this case arising from their actions.

**Jury Trial Demanded**

Respectfully submitted,

/s/ Louis J. Meyer
*Counsel for the Plaintiff*

Louis J. Meyer
Law Offices of Lawrence V. Jackowiak
20 North Clark Street, Suite 1700
Chicago, Illinois 60602
(312) 795-9595