## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MARK GEINOSKY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10 C 1438 |
| | ) | |
| vs. | ) | Judge Darrah |
| | ) | Magistrate Judge Valdez |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S RESPONSE TO DEFENDANTS'
### MOTION DISMISS PLAINTIFF'S COMPLAINT

Plaintiff, Mark Geinosky, through counsel, Jackowiak Law Offices, responds to Defendants' motion to dismiss as follows:

This is a § 1983 case arising from the Defendant-Officers' issuance of 24 fraudulent parking tickets to Plaintiff. The tickets were issued to Plaintiff beginning shortly after Plaintiff and his wife, who is friendly with several Chicago police officers, went through a contentious separation. All of the tickets were issued for a Toyota registered to Plaintiff. The tickets would arrive in groups of three or four at a time, and they were in sequential order from the same ticket book. The series of tickets would sometimes allege parking violations that were physically impossible—for instance parking on the sidewalk, obstructing the roadway and double parking at the same address on the same day at the same time. All of the alleged violations occurred in neighborhoods where Plaintiff never drove his car. Even after the Toyota was no longer registered to Plaintiff, he continued to receive tickets for the Toyota at his home. All 24 tickets were issued by officers in Unit 253 of the Chicago police department. Plaintiff contested all 24 tickets, and every one of them was dismissed after a hearing. The theory of Plaintiff's case is that Defendants issued these parking tickets to help Plaintiff's estranged wife exact revenge on him.

In this lawsuit, Plaintiff alleges § 1983 claims for denial of equal protection, denial of substantive due process, and civil conspiracy. Defendants have moved to dismiss the first amended complaint, arguing that: (1) some of Plaintiff's claims are time barred; (2) Plaintiff's equal protection claim fails because he has not identified a similarly situated individual whom Defendants intentionally treated differently; (3) Plaintiff's equal protection claim fails because it

is based on "discretionary police functions;" (4) Plaintiff cannot overcome the "presumption" that the actions of the Defendants had a rational basis; (5) Plaintiff's substantive due process claim fails because it does not allege sufficiently egregious conduct; (6) Plaintiff's substantive due process claim does not allege violation of a sufficiently fundamental right; (7) Plaintiff's substantive due process claim is barred by *res judicata*; and (8) Plaintiff's conspiracy claim should fail because his constitutional rights were not violated. For the reasons explained below, all of these arguments lack merit and should be rejected.

**Plaintiff's Claims Are Timely**

Defendants assert that claims premised on parking tickets issued to Plaintiff between October 2007 and January 2008 should be dismissed because they are time-barred, and all reference to those tickets should be stricken. The argument should be rejected. In Count III, Plaintiff has pled that the Defendant-Officers, all members of the same unit of the Chicago Police Department, engaged in a conspiracy to deprive Plaintiff of his constitutional rights by issuing Plaintiff baseless tickets and then covering up for each others' misconduct. The statute of limitations on a civil conspiracy claim does not begin to run until the last overt act is taken in furtherance of the conspiracy. Scherer v. Balkema, 840 F.2d 437, 440 (7th Cir.1988). Here, the last act in furtherance of the Defendant-Officers' conspiracy was the last baseless ticket they issued to Plaintiff in December 2008.

Defendants also ask the court to strike this material from the complaint because they allege that it is irrelevant and prejudicial. This request should be denied because the tickets issued outside the limitations period are relevant to the conspiracy count and the Defendant-Officers' role in covering up the misconduct by their fellow officers.

**Plaintiff's Complaint States a Claim for Denial of Equal Protection**

Next, Defendants argue that the complaint should be dismissed because Plaintiff has not established that he has "intentionally been treated differently from a similarly situated individual." The argument lacks merit.

The courts have repeatedly and consistently held that "an individual may prove an equal protection claim by showing that the action taken by the state was a spiteful effort to 'get' him

for reasons wholly unrelated to any legitimate state objective." Vetter v. Village of Oak Lawn, 2002 WL 1989441 (N.D.Ill., August 26, 2002) (Darrah, J.); quoting, Esmail v. Macrane, 53 F.3d 176, 180 (7th Cir. 1995). This method of pleading a class-of-one claim does not require proof that Plaintiff was treated differently than others similarly situated, but rather requires Plaintiff to "prove that illegitimate animus toward the individual by the defendant was the cause of such treatment." Id.

In Esmail, the plaintiff alleged that mayor of Naperville denied his liquor license applications simply to exact "retaliation and vengeance" against him because of his outspoken criticism of the town's enforcement of liquor laws. The Seventh Circuit held that the complaint stated a claim for denial of equal protection, writing: "If the power of government is brought to bear on a harmless individual merely because a powerful state or local official harbors a malignant animosity toward him, the individual ought to have a remedy in federal court. ... [S]ome objectives of state action simply are illegitimate and will not support actions challenged as denials of equal protection." Esmail, 53 F.3d at 179-80.

In Olech v. Vill. of Willowbrook, 160 F.3d 386 (7th Cir. 1998), the plaintiff alleged that he was denied equal protection when village officials demanded a greater easement from him than from other homeowners to connect his property to the municipal water grid, due to ill will resulting from his previous successful lawsuit against the village. The Seventh Circuit reversed the district court's decision granting the village's motion to dismiss the equal protection claim, holding that: "the equal protection clause provides a remedy when a powerful public official picked on a person out of sheer vindictiveness." Id. at 387. The Olech court held that to sustain this type of equal protection claim, the Plaintiff must allege (and ultimately prove at trial) that illegitimate animus toward him was the cause of such treatment. Id. at 388.

More recently, in Lauth v. McCollum, 424 F.3d 631 (7th Cir.,2005), the court further explained that equal protection claims are designed to address situations in which government actors single out a person for unfavorable treatment without a legitimate purpose for doing so:

> The paradigmatic "class of one" case ... is one in which a public official, with no
> conceivable basis for his action other than spite or some other improper motive
> (improper because unrelated to his public duties), comes down hard on a hapless
> private citizen.

Id. at 633. See also, Hanes v. Zurich, 578 F.3d 491, 495-96 (7th Cir. 2009) (claim that police repeatedly arrested plaintiff because they disliked him stated class-of-one claim).

That is exactly what is alleged in the present case. Plaintiff alleges that he was harassed with numerous bogus parking tickets. There was no legitimate reason for these parking tickets. The violations did not occur, and in many cases could not have occurred. The officers issuing the tickets knew that the violations did not occur. Plaintiff alleges that the reason the Defendant-Officers issued these baseless tickets was their agreement to help his estranged wife exact revenge on Plaintiff. (First Amended Complaint at ¶ 9.) Under the Seventh Circuit's holdings in Esmail and Olech, Plaintiff has stated a claim for denial of equal protection. He alleges that his car was not parked in violation of any law, and that he alone was singled out for to receive completely fraudulent parking tickets. Thus, "similarly situated" people, i.e. other citizens who were legally parked, did not receive packages of fraudulent parking tickets. Defendants' argument should be rejected.

**The Actions Alleged in the Complaint are not "Discretionary Police Functions"**

Defendants next argue that the complaint should fail because Plaintiff's complaints are "the product of subjective, discretionary police functions" which cannot form the basis for an equal protection claim. In support of this argument, Defendants attempt to analogize this case to a scenario in which numerous people are speeding, but due to a lack of resources, the police use their discretion to stop and ticket only one offender. Plaintiff agrees that mere uneven enforcement of the law is not generally a basis for an equal protection claim. But that is not what is alleged here.

Plaintiff does not allege that he was issued parking tickets which were legitimate, but other individuals who were also illegally parked did not receive tickets. Rather, Plaintiff alleges that he received tickets for violations which *never occurred*, and which the Defendant-Officers *knew had not occurred*, as part of a deliberate campaign by officers in Unit 253 to harass him.

In Olech, the Seventh Circuit addressed and rejected the exact argument that Defendants put forth here. The Court explained that while uneven enforcement, standing alone, is typically not constitutionally suspect, it becomes actionable as a denial of equal protection when it is motivated by an illegitimate aim:

4

> [Plaintiff] was complaining that he had been denied liquor licenses on the basis of trivial infractions for which no other applicant had ever been denied a license. Standing by itself, this difference in treatment would not have been a denial of equal protection, but merely an example of uneven law enforcement, than which nothing is more common nor, in the usual case, constitutionally innocent. ... The plaintiff had to and did allege that the denial of his applications was the result not of prosecutorial discretion honestly (even if ineptly, even if arbitrarily) exercised but of an illegitimate desire to "get" him because of lawful actions by him that had aroused the mayor's ire.

Olech, 160 F.3d at 388. See also, Hanes, 578 F.3d at 496 ("some discretionary police decision-making is off-limits from class-of-one claims. One example ... is the traffic cop who has no way to distinguish among many speeding drivers. But the officer who repeatedly arrests someone solely because of malice does have a way to distinguish between the citizen repeatedly arrested and the citizen left alone: the officer hates the arrestee.")

That is exactly what is alleged in the present case. Defendants' argument is thus baseless and should be rejected.


**Plaintiff has Pled Sufficient Facts to Show that The Government Action was Irrational**

Defendants contend that there is a "presumption of rationality" associated with government actions and Plaintiff has not alleged sufficient facts to overcome it. In support of this argument, Defendants cite to Lauth v. McCollum, 424 F.3d 631 (7th Cir. 2005), Flying J Inc. v. City of New Haven, 549 F.3d 538 (7th Cir. 2008), and Wroblewski v. Washburn, 965 F2d 452 (7th Cir. 1992), in which the Seventh Circuit explained that a class-of-one equal protection Plaintiff must plead facts which "negative any reasonably conceivable state of facts that could provide a rational basis" for the challenged government action. Defendants propose two allegedly rational reasons why the tickets could have been issued: that the parking violations actually occurred or that a clerical error caused the tickets to be issued.

Plaintiff has clearly pled sufficient facts to negative both of those supposed explanations. Plaintiff has pled that: (1) none of the 13 alleged violations occurred; (2) the Toyota was not parked at or near the locations where the violations allegedly occurred; (3) all of the violations were dismissed by Administrative Law Judges when Plaintiff appeared to contest the tickets; (4) even after the Toyota was no longer registered to Plaintiff, he continued to have bogus tickets

sent to his home. These allegations, if proven at trial, would clearly support a finding that the officers lacked a rational basis to issue the tickets to Plaintiff.

All the Defendants establish in their motion is that they plan to contest Plaintiff's assertions that Defendants' actions were motivated by illegitimate animus. But at the motion to dismiss stage, Plaintiff's allegations that the tickets were meritless, known to the officers to be meritless, and issued as part of a scheme to help Plaintiff's estranged wife exact revenge on him are entitled to the benefit of the doubt.

**Plaintiff Has Pled Conduct Which is Violated His Right to Substantive Due Process**

Defendants next argue that Plaintiff's substantive due process count should be dismissed because the conduct alleged in the complaint does not "shock the contemporary conscience." A substantive due process claim is available when the conduct complained of was an "arbitrary abuse of government power that shocks the conscience." County of Sacramento v. Lewis, 523 U.S. 833, 846-47, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

Defendants' argument on this count is essentially that Plaintiff's complaint of repeatedly receiving fraudulent parking tickets is "trivial" and does not rise to the level of an abuse of power that shocks the conscience. The argument does not withstand scrutiny.

The courts have squarely held that: "deliberate action intended to harm another is the type of conduct targeted by the Fourteenth Amendment: Conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Bublitz v. Cottey, 327 F.3d 485, 491 (7th Cir. 2003); see also, Belcher v. Norton, 497 F.3d 742, 753-54 (7th Cir. 2007) (allegation that defendant police officer tried to extort a van from civilians by threatening to falsely arrest them stated a substantive due process claim.) This is exactly the type of case a substantive due process claim is designed to address.

Defendants' reliance on County of Sacramento v. Lewis, 523 U.S. 833, is flawed. There, the plaintiff sued after a police officer accidentally struck and killed another motorist during a car chase. The Supreme Court held that allegations that an officer behaved negligently or recklessly could not state a claim for denial of substantive due process.

6

In this case, Plaintiff does not allege recklessness or mere negligence. Rather Plaintiff alleges knowing, deliberate actions by the Defendant-Officers undertaken for no reason other than to injure Plaintiff and help his estranged wife exact revenge against him.

**Plaintiff Does Not Need to Allege Deprivation of a "Fundamental Interest"**

Defendants' next argument is that Plaintiff's substantive due process claim should be dismissed because Plaintiff has not alleged that the government action at issue denied him a "fundamental right" or liberty. This argument misunderstands the applicable law. The Fourteenth Amendment's Due Process Clause protects individuals from state action that either "shocks the conscience," Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) or interferes with rights "implicit in the concept of ordered liberty." Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937).The Supreme Court has held that in addition to restricting legislation that interferes with fundamental rights, substantive due process also "bar[s] certain government actions regardless of the fairness of the procedures used to implement them." Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); see also, Miller v. Henman, 804 F.2d 421, 427 (7th Cir.1986) ("The nub of a substantive due process claim is that some things the state just cannot do, no matter how much process it provides.")

This prohibition extends to government conduct that amounts to an "abuse of power lacking any reasonable justification in the service of a legitimate governmental objective." County of Sacramento v. Lewis, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). As explained above, that is exactly what is alleged in this case. The complaint clearly alleges that Plaintiff was forced, over and over again, to respond to bogus parking tickets which the Defendant-Officers gave him for malicious reasons. That is the type of deprivation contemplated by the case law.

**Plaintiff's Substantive Due Process Claim is not Barred by *Res Judicata* or Collateral Estoppel**

Defendants also claim that the substantive due process count is collaterally estopped because the tickets were dismissed. The argument lacks merit. Collateral estoppel and *res judicata* apply only to those issues that were, or could have been, litigated on their merits in the previous proceeding. Obviously, whether the Defendant-Officers' conduct violated Plaintiff's

constitutional rights was not, and could not have been, litigated before the Administrative Hearing Officers who decided to dismiss the tickets. Plaintiff's constitutional rights to equal protection and substantive due process were not vindicated by the dismissal of the tickets.

**Plaintiff's Conspiracy Claim Should Not Be Dismissed**

Defendants' final argument is that Plaintiff's conspiracy claim must fail if his equal protection and denial of substantive due process claims fail. Of course, Plaintiff's § 1983 conspiracy claim hinges on an underlying deprivation of his constitutional rights. For the reasons stated above, Plaintiff has pled sufficient facts to support his independent constitutional claims, and Defendant's motion to dismiss the conspiracy claim should also be denied.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that this Honorable Court deny Defendants' motion to dismiss in its entirety.

Respectfully submitted,

/s/ Adele D. Nicholas
*Counsel for the Plaintiff*

Adele D. Nicholas
Lawrence V. Jackowiak
Law Offices of Lawrence V. Jackowiak
20 North Clark Street, Suite 1700
Chicago, Illinois 60602
(312) 795-9595

8